(21 App. Div. 413.)

### GAMBLE v. CUNEO et al.

(Supreme Court, Appellate Division, First Department.   October 22, 1897.)

1. CONTRACTS OF INDEMNITY—RULES OF CONSTRUCTION.
   The rule that a contract of a surety is strictissimi juris is not a rule of construction, but a rule of application of the contract after its meaning has been ascertained. It is to be interpreted like any other paper, and by the usual rules.
2. SAME.
   Plaintiff became surety on an undertaking on appeal, in reliance on appellant's promise to procure some one to give him a contract to indemnify him against damages. On appellant's failure to fulfill the promise, plaintiff threatened to apply for a discharge from the undertaking, and appellant then procured defendant to give plaintiff a contract to save him harmless from damages suffered by reason of his "continuance" on the undertaking. *Held,* that the indemnity was against damage by reason of the suretyship, and not merely by reason of the continuance on the bond, and hence, where the judgment was affirmed, and plaintiff paid it, he might recover the amount thereof from defendant.

Appeal from trial term.

Action by William Gamble against Nicholas Cuneo and others. From a judgment dismissing the complaint, entered on direction of the trial term, plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Franklin Pierce, for appellant.
Frederick H. Man, for respondents.

RUMSEY, J.   The action was brought to recover upon a contract of indemnity made by Cuneo and another person to the plaintiff to save him harmless from any damages which he should suffer by reason of his continuance as one of the sureties in an undertaking upon appeal.   No testimony was given on the part of the defendants, and the case stands solely upon that offered by the plaintiff.   At the close of the case the complaint was dismissed.   The facts are that on the 6th day of May, 1895, one Wiley recovered in this court a judgment against the defendant Goodsell, from which Goodsell

wished to take an appeal.  Goodsell applied to Gamble to become a
surety upon an undertaking to stay proceedings upon appeal, and
promised, if he would execute the undertaking, that he would have
a responsible party give him an agreement to save him harmless from
all expenses and damages which he might suffer by reason of sign-
ing the appeal bond.  Relying upon this promise, Gamble did be-
come a surety upon the undertaking on the 24th of May, 1895.
Goodsell, however, failed to keep his promise, and, after some effort
to induce him to furnish security, Gamble told him that he would
make an application to be discharged from the undertaking upon
the ground that he had been procured to execute it by false and
fraudulent representations; but that there was any ground for this
charge on the part of Gamble does not appear.  After Gamble had
told Goodsell that he would make an effort to be discharged, Good-
sell procured Cuneo to give him the instrument upon which this
suit is brought.  The result of the appeal taken from the Wiley
judgment was that it was affirmed, and Gamble was finally com-
pelled to pay, by reason of that affirmance, the amount of the judg-
ment and costs, which was $5,301, and which he did pay on the 20th
of November, 1896.  He then demanded from Cuneo the amount
which he had been obliged to pay, and upon Cuneo's refusal he
brought this action.  The complaint was dismissed by the learned
trial justice upon the ground that the agreement made by Cuneo does
not amount to a contract with Gamble to hold him harmless from
any loss or damage which might happen to him by reason of his being
a surety upon the undertaking upon appeal, but only to indemnify
him against the damages which he might suffer by reason of his con-
tinuance as one of the sureties upon the appeal bond, and that as
Gamble's liability arose by reason of his execution of the undertak-
ing upon appeal, and already existed at the time when Cuneo made
this agreement with him, it cannot be said that the payment which
he made was a damage which accrued to him by reason of his con-
tinuance upon the undertaking, but was the result of his liability
already incurred.

It is claimed on the part of the defendants that the contract of
Cuneo, being a contract of suretyship, is to be strictly construed,
and that he can be held liable only if the damage which Gamble suf-
fered can be attributed to no other cause than his continuance upon
the appeal bond.  It is quite true that in one sense the contract of a
surety is strictissimi juris, and it is not to be extended beyond the
express terms in which it is expressed.  This rule, however, is not a
rule of construction of a contract, but a rule of application of the con-
tract after the construction of it has been ascertained.  Where the
question is as to the meaning of the language of the contract, there
is no difference between the contract of the surety and that of any-
body else.  Gates v. McKee, 13 N. Y. 232, 237; Belloni v. Freeborn,
63 N. Y. 383.  In the case of a surety, as in the case of anybody else,
when it becomes necessary to construe the contract the usual rules
are to be used, and it is to be interpreted like any other paper.  Those
rules are that in the construction of a contract the situation of the
parties at the time the contract is made is to be taken into considera-

tion, the language used is to be interpreted in view of that situation so as to accomplish the purpose for which the contract was made, if it can be done, and that, if there is any ambiguity in the contract, it is to be construed most strongly against the contractor, and in favor of the person who has accepted the contract and expected to be benefited by it. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; Crist v. Burlingame, 62 Barb. 351. It is also another rule of construction, which obtains as well in ethics as in law, that, if the terms of a promise admit of more senses than one, the promise is to be construed in that sense in which the promisor believed the other party to have accepted it. It appears in this case that Gamble, after he had executed the undertaking upon appeal, had reason to complain of the conduct of Goodsell in procuring him to do so. Goodsell had undoubtedly failed to keep his promise to give to Gamble security, and the charge was made by Gamble, and not refuted by Goodsell, that the execution of the appeal bond had been brought about by fraudulent representations made to Gamble, and Gamble had threat-, ened to apply to the court in some way to have the bond canceled, and Goodsell had requested him not to make that application. Such was the condition of affairs when Cuneo signed the agreement in suit. The object of giving that agreement was, as recited in it, the consent of Gamble to remain and continue as security upon the undertaking. That must have been known to Cuneo when he gave it, because he so recites; and it is undisputed that, because of the execution of this agreement by Cuneo, Gamble did consent to remain as a surety upon the appeal bond. He was induced to refrain from making any application to the court to be relieved from it, and that of itself constituted a sufficient consideration for the execution of this contract, whether such an application would have been successful or not. The intention of the parties was that whatever damages Gamble might suffer by withdrawing that consent and continuing upon the bond should be made good to him by Cuneo. That was the express agreement of the parties, and was the precise thing against which Cuneo agreed to protect him. It is not to be disputed that the damage which he suffered because he was compelled to pay the amount of this appeal bond was suffered by him after the execution of this agreement of Cuneo, and that those damages were the result, not only of the execution of the undertaking upon appeal, but of his continuing upon the undertaking after the 18th of July, 1895, which was the date of Cuneo's agreement. They were fairly within the contemplation of the parties, as it seems to us, and the agreement was sufficient to indemnify him against them. For this reason the plaintiff had shown a cause of action when he rested his case, and the dismissal of the complaint was error. The judgment therefore must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.